UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ROBIN MCKELVEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-CV-194 NAB |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Robin McKelvey's (McKelvey) appeal regarding the denial of her application for disabled widow's benefits and supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). McKelvey alleged disability due to major depression. (Tr. 160.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 6.] Based on the following, the Court will affirm the Commissioner's decision.

**I.    Background**

On April 18, 2013, McKelvey applied for widow's insurance benefits and supplemental security income with an alleged onset date of January 3, 2012. (Tr. 128-44.) The Social Security Administration ("SSA") denied McKelvey's claim and she filed a timely request for a

---

[1] At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of Social Security. Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Nancy A. Berryhill for Carolyn W. Colvin in this matter.

hearing before an administrative law judge ("ALJ"). (Tr. 68-86.) The SSA granted McKelvey's request for review. (Tr. 89-91.) An administrative hearing was held on March 31, 2014. (Tr. 31-55.) McKelvey, who was represented by counsel, and a vocational expert testified at the hearing. On May 12, 2014, the ALJ issued a written opinion upholding the denial of benefits. (Tr. 11-21.) McKelvey requested review of the ALJ's decision from the Appeals Council. (Tr. 7.) On August 28, 2015, the Appeals Council denied McKelvey's request for review. (Tr. 1-4.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). McKelvey filed this appeal on October 28, 2015. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on January 11, 2016. [Docs. 9, 10.] McKelvey filed a Brief in Support of Complaint on February 10, 2016. [Doc. 11.] The Commissioner filed a Brief in Support of the Answer on May 3, 2016. [Doc. 17.] McKelvey filed a Reply Brief on May 17, 2016. [Doc. 18.]

## II.    Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months[2]." 42 U.S.C. § 416(i)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines

---

[2] Eligibility for widow's benefits is determined using the same standard as determining disability for disabled workers. *See* Omnibus Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat 1388; 42 U.S.C. § 416.

whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. McKelvey's Hearing Testimony

McKelvey testified that she was an unmarried widow who lived alone. (Tr. 37.) McKelvey graduated from high school and is able to read and write. (Tr. 37.) She last worked fifteen years before the hearing. (Tr. 37.)

She testified that a nurse practitioner Akai[3] has been her main treating provider for about thirteen years. (Tr. 40.) McKelvey testified that she was unable to work full time, because she has lower back problems, experienced trouble sleeping at night, had trouble standing and sitting, her knees swelled, she couldn't bend over, and she needed a heating pad. (Tr. 41-42.) McKelvey's knees swell "all the time" and she has to elevate them every two or three hours, if she is up on them, for 30 to 45 minutes at a time. (Tr. 42.) She testified that her medication causes dizziness and drowsiness. (Tr. 42.) She also experiences slowing of her thinking, shaking, and her stomach burning from the effects of her medication. (Tr. 42.)

McKelvey cared for her husband before he died, but she only cooked, cleaned and gave him his medicine. (Tr. 43.) She did not lift and carry him. (Tr. 43.) McKelvey stated she could only lift five pounds at one time and sit and stand for fifteen minutes at a time without having to adjust herself. (Tr. 43-44.) She lies down several times a day between 45 minutes to an hour. (Tr. 44.) She is unable to climb stairs. (Tr. 44.) No medicine has helped with the pain in her knees and back. (Tr. 48.)

She attends community counseling with Dr. Nowotny. (Tr. 44.) McKelvey testified that her depression and anxiety symptoms include crying a lot and panic attacks. (Tr. 44.) She normally has panic attacks when there are too many people around. (Tr. 45.) She does not like

---

[3] It appears that "Akai" is a transcription error and that the ALJ and McKelvey are referring to nurse practitioner Sara Buchheit.

being with people. (Tr. 48.) McKelvey also has short term and long term memory problems. (Tr. 45.) McKelvey testified that she skips all over the place when trying to do things at home. (Tr. 46.) She is able to perform personal care duties such as comb her hair, take a shower, cook, do dishes, and laundry. (Tr. 46-47.) She cannot take out the trash, because of an uneven ground. (Tr. 47.) She has to use a cart for shopping and only goes shopping when the store opens or late at night. (Tr. 47.) During the day, she watches TV and does dishes periodically. (Tr. 47.) She cannot get down and vacuum, stoop or move furniture, or climb anything. (Tr. 49.)

### B. Vocational Expert Testimony

Vocational Expert (VE) Bob Hammond testified that a hypothetical person of McKelvey's age, education, and work experience who could perform light work with the following limitations: (1) occasionally climb ramps and stairs; (2) never climb ladders, ropes, or scaffolds; (3) avoid unprotected heights; and (4) occasional interaction with supervisors, co-workers, and the general public would be able to perform a job as an assembler 2, bench assembler, and injection molder. (Tr. 50-51.) The VE opined, based on his professional experience, that if the hypothetical person also had to elevate both legs at waist high, whether intermittently or all at one time for two hours a day, there would not be any jobs available in the national or regional economy. (Tr. 51.) The VE also opined that a person would be unable to take more than two additional six minute breaks during the day. (Tr. 52.) The VE testified that if the hypothetical person required the option to change between sitting and standing every 15 minutes throughout the work day no jobs would be available. (Tr. 53.) Finally, the VE opined that a person also would be unable to maintain the positions identified above if the person were off task over ten percent of the time. (Tr. 53.)

C. **Medical Records**

The relevant medical evidence is as follows:

1. **Community Counseling Center**

McKelvey began treatment at the Community Counseling Center on January 3, 2012. (Tr. 257-60.) During her intake interview, licensed professional counselor Walter Major found that she was oriented times four. (Tr. 259.) Major noted a depressed mood and diagnosed McKelvey with major depressive disorder, recurrent, severe without psychotic features. (Tr. 259.) He also opined that she had a global assessment functioning[4] score of 50. (Tr. 259.) On February 10, 2012, Dr. Thomas Nowotny, completed a Psychiatric Evaluation for McKelvey. (Tr. 222-24, 253-55.) McKelvey reported a mad mood and poor memory. (Tr. 223, 254.) He noted that she was alert, attentive, and cooperative and her insight and judgment were fair. (Tr. 223, 254.) Dr. Nowotny diagnosed McKelvey with major depressive disorder, single episode, history of panic attacks, and organic affective disorder secondary to thyroid. (Tr. 223, 254.) Dr. Nowotny prescribed Prozac and Trazadone. (Tr. 224, 255.)

McKelvey's diagnosis of major depressive disorder remained consistent throughout her treatment. (Tr. 239-52.) Dr. Nowotny monitored McKelvey's medication and McKelvey received counseling with Major. Most of her mental status examinations were within normal limits, with the exception of the time period around her husband's death.

2. **Cape Family Care**

McKelvey visited Cape Family Care twice in 2013. Sara Buchheit, a board certified nurse practitioner, treated McKelvey at both visits. The purpose of McKelvey's first visit was to

---

[4] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

establish patient care in July 2013 and obtain a letter for widows' pension disability[5]. (Tr. 275-79.) Buchheit noted that McKelvey had a limited range of motion of the lumbar spine in flexion to 30 degrees. (Tr. 278.) Buchheit diagnosed McKelvey with low back pain, chronic migraine without aura and without intraction, and chronic depression. (Tr. 279.) She advised McKelvey to use ice and heating pads for back pain as well as over the counter medication. (Tr. 279.) On the same date, Buchheit completed a Medical Source Statement for McKelvey (Tr. 234-35.) Buchheit opined that McKelvey could only lift less than five pounds frequently and five pounds occasionally, she could stand/and or walk less than 15 minutes continuously without a break and less than one hour with usual breaks. She opined that McKelvey could sit continuously for 15 minutes without a break and sit less than an hour throughout an 8 hour work day with usual breaks. Buchheit opined that McKelvey had restricted foot and hand motions with weight limitations. Buchheit opined that McKelvey could never climb, balance, stoop, kneel, crouch, or crawl. She opined that McKelvey could only occasionally handle, finger, or feel. She also noted problems with McKelvey's vision. She noted that McKelvey should avoid any exposure to extreme cold, extreme heat, weather, wetness/humidity, dust, fumes, hazards, and heights and avoid moderate exposure to vibration. She opined that McKelvey requires the use of a walker or cane. She stated that McKelvey would need to lie down or recline every 2 hours for 30 to 45 minutes due to pain. Buchheit also noted that McKelvey was not on any prescription medication for pain; therefore, there is a decrease in her activities of daily living.

McKelvey's second visit occurred in November 2013. (Tr. 270-74.) Buchheit treated McKelvey for acute maxillary sinusitis. (Tr. 274.) Buchheit noted that McKelvey had a limited

---

[5] McKelvey testified that Buchheit treated her for thirteen years, but Buchheit had changed clinics so she was establishing care at the new clinic. (Tr. 40.)

range of motion of the lumbar spine in flexion to 30 degrees. (Tr. 273.) On the same date, Buchheit authored a letter stating the following:

> Robin McKelvey is a patient in our practice and has a long standing history of numerous medical conditions. These include depression, excessive stress, anxiety, arthritis, back problems, restricted motion, muscle stiffness, joint stiffness, and inability to sit for long periods of time. As such, she is unable to meet the requirements for jury duty.

(Tr. 237.)

On February 25, 2014, Buchheit completed two medical source statements regarding McKelvey's knee and back. (Tr. 266, 268.) Buchheit completed a checkbox that indicated McKelvey had neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, sensory or reflex loss, bilateral positive straight leg raising test, severe burning or painful dysesthesia, need to change positions more than once every 2 hours, pseudoclaudication, and inability to ambulate effectively. She also indicated that McKelvey suffered from severe to extreme pain. In both evaluations, Buchheit indicated that McKelvey cannot lift any weight on an occasional or frequent basis. She also indicated that McKelvey could never bend, stoop, balance, or climb a ladder or stairs. Buchheit indicated that could not work any hours per day and could sit for 30 minutes at a time. Buchheit indicated that McKelvey suffered from chronic pain, chronic stiffness, chronic swelling, chronic tenderness, limitation of motion, crepitus, instability, joint space narrowing, bony destruction, quadriceps muscle atrophy, synovial thickening, and inability to ambulate effectively.

### 3. Dr. Yusuf Chaudhry

The administrative record indicates that McKelvey visited Dr. Yusuf Chaudhry on January 29, 2014 for a consultative examination. (Tr. 262-63.) During that visit, McKelvey reported back pain and chronic knee pain. A physical examination showed that McKelvey had

8

bilateral knee swelling and crepitation[6] with range of motion noted and that her lumbar sacral spine showed severe lordosis[7] with lumbar sacral paraspinal muscle spasticity. Dr. Chaudhry diagnosed McKelvey with chronic low back pain syndrome, severe degenerative joint disease, morbid obesity, and a history of depression. On January 30, 2014, Dr. Chaudhry signed a document that stated that in his opinion McKelvey suffered from a mental and/or physical disability which prevented her from engaging in employment or gainful activity for 13 or more months and this opinion was based on his examination and/or medical records. (Tr. 264.)

## IV. Discussion

McKelvey presents one issue for review. She contends that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ improperly discounted medical evidence that supported her claim, improperly determined her credibility, and the evidence in the record supports a more restrictive RFC.

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[8] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at

---

[6] Crepitation the "noise made by rubbing together the ends of a fractured bone." Dorland's Illustrated Medical Dictionary 429 (37th ed. 2012). The root word crepitant means "rattling" or "crackling." *Id.*
[7] Lordosis is the "dorsally concave curvature of the lumbar vertebral column when seen from the side." Dorland's Illustrated Medical Dictionary 1074 (37th ed. 2012).
[8] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

907. "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Willcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 416.927(b). "A disability claimant has the burden to establish her RFC." *Eichelberger*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion.

The ALJ found McKelvey had the severe impairments of knee disorder, back disorder, obesity, depression, and anxiety. (Tr. 13.) The ALJ then found that McKelvey had the RFC to perform the light work, as defined in 20 C.F.R. § 416.967(b), with the following limitations: (1) occasionally climb ramps and stairs; (2) never climb ladders, ropes, or scaffolds; (3) avoid unprotected heights; and (4) occasional interaction with supervisors, co-workers, and the general public. (Tr. 16.) The ALJ determined that McKelvey had no past relevant work, but there were jobs in the national economy that she could perform. (Tr. 19.) Finally, the ALJ concluded that McKelvey had not been under a disability as defined in the Social Security Act, since January 3, 2012, the date of the decision. (Tr. 20.)

### A. Credibility Determination

First, McKelvey asserts that the ALJ erred in assessing her credibility. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the

claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

    (1) The claimant's daily activities;

    (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

    (3) Any precipitating or aggravating factors;

    (4) The dosage, effectiveness, and side effects of any medication; and

    (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

    The ALJ discounted McKelvey's credibility because there was limited evidence of treatment for physical impairments and the restrictions noted by her medical providers were not supported by the treatment notes. (Tr. 18.) The ALJ also found that McKelvey's daily activities were normal. (Tr. 18.) Regarding her mental impairments, the ALJ noted that McKelvey's

mental health treatment records show that she responded well to prescribed medication, she did not complain of any medication side effects, and her daily activities were independent and fairly normal. (Tr. 18.)

The ALJ considered several factors in evaluating McKelvey's credibility. All of the factors considered by the ALJ can be considered when assessing credibility in a social security disability case. *See Wildman v. Astrue,* 596 F.3d 959, 965 (2010) (an impairment controlled by treatment or medication cannot be considered disabling); *Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing credibility); *Juszczyk v.* Astrue, 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (ALJ could consider that claimant functioned as the primary caretaker for her home and two small children).

A review of the entire record demonstrates that ALJ did not rely solely upon any one of the factors in the credibility analysis. Considering the combination of the factors relied upon by the ALJ, substantial evidence in the record supports the ALJ's credibility findings. First, the ALJ correctly noted the extremely sparse medical treatment for McKelvey's physical impairments. Second, despite the substantial limitations proposed in the medical source statements, McKelvey's treatment recommendations were conservative. Third, McKelvey's mental health evaluation treatment notes indicate that during the alleged period of disability, McKelvey participated in substantially normal activities of daily living. Finally, it appeared that her mental health symptoms were controlled well by medication. Based on the foregoing, the Court finds that the ALJ's credibility determination was supported by substantial evidence in the record as a whole.

### B. Medical Opinion Evidence

Next, McKelvey asserts that the ALJ erred in evaluating the medical source statements and the RFC determination is inconsistent with the objective medical evidence. The Court finds that the RFC is supported by substantial evidence in the record as a whole. First, the objective medical evidence does not support McKelvey's claim of disability. Buchheit found limited range of motion during her two physical examinations. The limitations contained in Buchheit's medical source statements, however, do not coincide with the very limited medical findings during the physical examinations. Dr. Chaudhry found bilateral knee swelling, crackling with range of motion, spinal curvature, and muscle spasms during his one physical examination. (Tr. 263, 273, 278.) Dr. Chaudhry's opinion only states that he believes McKelvey is unable to work for 13 or more months. Dr. Chaudhry's opinion does not provide any supporting evidence for his assertion that McKelvey is unable to work. No functional limitations were included in the opinion. The mere existence of a medically determinable impairment does not mean that it is severe or that it supports a finding of disability. *Stormo v. Barnhart*, 377 F.3d 801, 808 (8th Cir. 2004). Moreover, one or two visits is not enough time to develop a longitudinal picture of a claimant's medical impairments. *See e.g. Randolph v. Barnhart,* 386 F.3d 835, 840 (8th Cir. 2004) (three visits insufficient to formulate an opinion of claimant's ability to function in the workplace). Buchheit asserts that McKelvey is unable to work, but only recommended that McKelvey use ice/heat packs and over the counter medication for her pain. Buchheit also advised McKelvey to "maintain as normal as activity as possible but within limits," without specifying any limits. (Tr. 279.) Therefore, McKelvey's providers' diagnoses regarding her physical impairments and the treatment she received did not support her claim of disabling conditions.

Finally, McKelvey contends that the ALJ failed to consider Dr. Chaudhry's opinion that McKelvey was unable to work, because it was not contained in the opinion. An ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d at 966 (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Although the ALJ did not mention that particular statement, he cited to the evidence, which contains the statement so the Court assumes that he considered it. *Wildman*, 596 F.3d at 966 (given the ALJ's specific reference to findings set forth in the doctor's notes, it is highly unlikely that the ALJ did not consider and reject the doctor's statement that claimant was markedly limited). Further, a physician's statement that a claimant is disabled is a determination reserved to the Commissioner and a statement by a medical source that a claimant is disabled or unable to work does not require an automatic determination of disability by the Commissioner. *See* 20 C.F.R. § 416.927(d)(1). As stated by the ALJ, Dr. Chaudhry did not even assess any functional limitations to support his opinion. Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

## V.     Conclusion

A review of the record as a whole demonstrates that McKelvey has some restrictions in her functioning and ability to perform work related activities, however, she did not carry her burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 11.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Nancy A. Berryhill for Carolyn W. Colvin in the court record of this case.

Dated this 23rd day of March, 2017.

                                                  /s/ Nannette A. Baker
                                                  NANNETTE A. BAKER
                                                  UNITED STATES MAGISTRATE JUDGE